## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

JESICA PIMENTEL,

  Plaintiff,

v.                                   CASE NO.: **JURY TRIAL DEMANDED**

TRANS UNION LLC and REGIONAL
FINANCE CORPORATION OF TEXAS,

  Defendants.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JESICA PIMENTEL (hereinafter "Plaintiff"), by and through the undersigned counsel, sues TRANS UNION LLC, (herinafter "Trans Union), and REGIONAL FINANCE CORPORATION OF TEXAS (hereinafter "Regional Finance"), and collectively, (hereinafter "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## **PRELIMINARY STATEMENT**

1. This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2. Today in America there are three major consumer reporting agencies ("CRAs"), Equifax Information Services, LLC ("Equifax"), Trans Union LLC ("Trans Union"), and Experian Information Services, LLC ("Experian").

3. Consumer reporting agencies that create consumer reports, like Equifax, Experian, and Trans Union, are charged with using reasonable procedures designed to ensure the

maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like Credit One Bank, particularly where a consumer makes a dispute about information reported.

4. When a consumer, like Plaintiff, disputes information through the agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION

6. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681 (p) and 28 U.S.C. 1367.

7. The Plaintiff is a natural person and resident of Collin County, within the State of Texas. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8. Trans Union is a corporation authorized to conduct business in the State of Texas through its registered agent, The Prentice-Hall Corporation System located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

9. Trans Union is a "consumer reporting agency," as defined in 15 USC § 1681(f). is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

10. Trans Union disburses such consumer and credit reports to third parties under contract for monetary compensation.

11. Regional Finance is a corporation authorized to conduct business in the State of Texas through its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

## FACTUAL ALLEGATIONS

12. Plaintiff is a natural person who is alleged to owe a debt to Regional Finance.

13. On or about February 23, 2020, Plaintiff received an alert from Credit Journey through Chase, notifying her that an unauthorized account had been opened.

14. Subsequently, on or about February 25, 2020, Plaintiff filed a Police report with Officer Jonathan Varghese at the Frisco Police Department notifying them of the fraudulent activity within her Credit Report. She was provided with the report number, CS# 20022039.

15. Plaintiff contacted Regional Finance at 800-448-7000 to dispute the account in question. She told them who she was through a series of questions the agent(s)/representative(s) had asked. One of the questions was if she was still employed by the hospital. Plaintiff responded to this question stating she did not have and has never been employed for any position at a hospital. Regional Finance also notified her that the account issued a check which was deposited into a Wells Fargo account with a Driver's License. Plaintiff has never had an account with Wells Fargo. Plaintiff also has never had a driver's license.

16. Plaintiff then communicated with Trans Union and explained that the account was not her debt and tried to dispute the account with an agent over the phone.

17. On or around March 14, 2020, Plaintiff wrote a dispute letter to Trans Union to dispute the erroneous account. In this aforementioned letter, Plaintiff explained in detail why the account did not belong to her.

18. Plaintiff indicated in the dispute letter that she did not apply nor did she opened or use the account for Regional Finance in the amount of $2,534. Plaintiff indicated that she never received correspondence of the account to her address or through her alleged employer. Plaintiff provided an image of the police report, her social security number as well as current and previous home addresses in the dispute. Plaintiff provided extensive information about herself and about the erroneous account being reported. She also explained in detail the steps she took throughout the process to have the account investigated and removed.

19. Upon information and belief, Trans Union notified Regional Finance of Plaintiff's dispute and provided a copy of Plaintiff's dispute letter to Regional Finance.

20. Regional Finance refused to acknowledge that the account did not belong to the Plaintiff and to correct the erroneous information and/or Trans Union ignored their instructions to delete the fraudulent account. Regional Finance should have received with the ACDV dispute images of the detailed letter from Plaintiff. Regional Finance had already communicated with Plaintiff and was aware she had disputed the account.

21. The account was the result of negligent or willful mishandling by Regional Finance and/or failure by Trans Union to re-investigate all the facts Plaintiff explained in her dispute letter.

22. Trans Union kept the erroneous account on Plaintiff's credit report despite being notified that Plaintiff was not the debtor and a victim of a mixed file, negligence and/or identity theft.

23. To date, Trans Union has failed to report the proper information on Plaintiff's credit report despite having been given ample notice of its error.

24. Trans Union has been aware of the identity theft and chose not to believe Plaintiff regarding the fraudulent account.

25. As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    i. Stress associated with not being able to get any credit;

    ii. Monies lost by attempting to fix her credit;

    iii. Loss of time attempting to cure the error;

    iv. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

    v. Plaintiff is being forced not to apply for credit because Trans Union continues to report a delinquent account that does not belong to her.

26. All conditions precedent to the filing of this action has occurred.

## CAUSES OF ACTION

### COUNT I
### (Violation of § 1681e(b) of the FCRA – Trans Union LLC)

27. The Plaintiff re-alleges and incorporates one (1) through twenty-six (26) as if fully set out herein.

28. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff. Trans Union, even though receiving images of a police report and a full explanation, Trans Union merely requested verifications of data Plaintiff informed Trans Union it would match.   In identity theft cases,

simply asking the furnisher to verify a date of birth, name and social security is not enough.

29. As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage by stress, mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials and/or decreases.

30. Plaintiff provided a police report involving identity theft. Trans Union failed to conduct any independent investigation. Plaintiff provided a copy of her Driver's License and Social Security card which should have triggered a procedure to independently evaluate the dispute, yet Trans Union failed to research the dispute by Plaintiff.

31. Trans Union's conduct, action, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, if Trans Union was negligent, Plaintiff is entitled to recover under 15 U.S.C. § 1681o. Trans Union merely parroted back to Plaintiff the brief information verified by Regional Finance.

32. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Trans Union LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

### COUNT II
### (Violation of § 1681i of the FCRA – Trans Union LLC)

33. Plaintiff re-alleges and incorporates paragraphs one (1) through twenty-three (23) above as if fully set out herein.

34. Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information

in the Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and by relying upon verification from a source it has to know is unreliable; particularly when a copy of their social security card and a police report are provided to show the obvious inaccuracies in their reporting.

35. Trans Union's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, if Trans Union was negligent, Plaintiff is entitled to recover under 15 U.S.C. § 1681o. Trans Union took no independent action to investigate the dispute. Trans Union chose to ignore the additional information provided and the clearly indicated erroneous accounts and inquiries listed in Plaintiff's disputes.

36. Plaintiff provided a copy of her Driver's License and Social Security Card which should have provided ample reason for Trans Union to delete the erroneous account information. Plaintiff provided police a report and Trans Union merely parroted back the information from Regional Finance.

37. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE** the Plaintiff demands judgment and compensatory, statutory, and punitive damages against Defendant, Trans Union LLC, jointly and severally; for her attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

## COUNT III
### (Violation of § 1681s-2(b)(1)(A) and (B) of the FCRA – Regional Finance)

38. Plaintiff re-alleges and fully incorporates paragraphs one (1) through twenty-three

(23) above as if fully stated herein.

39. On at least one occasion within the past two years, by example only and without limitation, Regional Finance violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

40. On one or more occasions within the past two years, by example only and without limitation, Regional Finance violated 15 U.S.C.§1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

41. When the Plaintiff mailed her detailed, written dispute and enclosures to the CRAs, they use a dispute system named "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as Regional Finance. It is an automated system and the procedures used by the CRAs are systemic and uniform.

42. When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor), translates that dispute into an "ACDV" form.

43. The ACDV form is the method by which Regional Finance has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

44. Based on the manner in which Trans Union responded to Plaintiff's dispute, representing that Regional Finance had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Trans Union did in fact forward the Plaintiff's dispute via an ACDV to Regional Finance. Regional Finance had already communicated with Plaintiff and was aware Plaintiff had disputed her ownership of the account. Plaintiff also indicated she did not have a Wells Fargo account and never received or deposited the check allegedly provided by Regional Finance.

45. Regional Finance understood the nature of the Plaintiff's dispute when it received

the ACDV from Trans Union.

46. When Regional Finance received the ACDV from Trans Union, it as well could have reviewed its own systems and previous communications with the Plaintiff and discovered that Regional Finance should not have made it onto Plaintiff's consumer report.

47. Notwithstanding the above, discovery will show Regional Finance follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Regional Finance does is review its own internal computer screen with basic data for the account and repeat back to the ACDV system the same information Regional Finance already had reported to the CRAs. Regional Finance at all times had possession of the application, identification of the applicant, as well as other information that could have easily discovered the fraudulent activity.

48. When Regional Finance receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate. Especially for an identity theft case, Regional Finance should go further than verifying the name, date of birth and Social Security number.

49. As a result of Regional Finance's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

50. The violations by Regional Finance were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Regional Finance was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

51. Discovery will confirm that the procedures followed regarding the Plaintiff's

FCRA dispute through e-Oscar were the procedures that Regional Finance intended its employees or agents to follow.

52. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Regional Finance in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Regional Finance Corporation of Texas, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

Respectfully submitted,

Joshua R. Kersey
Texas Bar No.: 24090206
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 983-2889
Primary Email: JKersey@ForThePeople.com
Secondary Email: DGagliano@ForThePeople.com
*Attorney for Plaintiff*